____ FILED          ____ ENTERED
____ LODGED         ____ RECEIVED

JUN 16 2014    PM

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                      DEPUTY

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* CHINNAPONGSE,<br><br>    Plaintiffs,<br><br>    v.<br><br>US WORLDMEDS, LLC,<br><br>    Defendant. | No. CV 14-876 mJP<br><br>**FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT ENTER ON PACER**<br>**DO NOT PLACE IN PRESS BOX** |

**14-CV-00876-CMP**

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

006217-11  696405 V1

**TABLE OF CONTENTS**

                                                                          Page

I.      INTRODUCTION ................................................................................................1

II.     PARTIES ...........................................................................................................3

III.    JURISDICTION AND VENUE .......................................................................3

IV.     BACKGROUND ................................................................................................4

        A.      Medicare ................................................................................................4

        B.      Medicaid ................................................................................................4

        C.      Other Government Health Care Programs ............................................4

        D.      US WorldMeds' Injectable Products Myobloc and Apokyn ...................5

                1.      Myobloc ......................................................................................5

                2.      Apokyn ........................................................................................6

V.      ALLEGATIONS ................................................................................................6

        A.      Unlawful Promotion and Kickbacks for Promotion and Use of Myobloc
                and Apokyn Results in the Submission of False Claims ...........................7

VI.     CONCLUSION ...............................................................................................16

VII.    COUNTS ...........................................................................................................17

        COUNT ONE  FALSE CLAIMS ACT  31 U.S.C. § 3729 (A)(1)(A)...............................17

        COUNT TWO  FALSE CLAIMS ACT  31 U.S.C. § 3729 (A)(1)(B) ..............................17

        COUNT THREE  CALIFORNIA FALSE CLAIMS ACT  CAL.
        GOV'T CODE §§ 12651(A)(1) & (2) ........................................................................18

        COUNT FOUR  COLORADO MEDICAID FALSE CLAIMS ACT  COLO.
        REV. STAT. §§ 25.5-4-305(1)(A) & (B) ..................................................................18

        COUNT FIVE  CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL
        ASSISTANCE PROGRAMS  CONN. GEN. STAT. §§ 17B-301B(A)(1) & (2) .............19

        COUNT SIX  DELAWARE FALSE CLAIMS AND REPORTING ACT
        DEL. CODE TIT. 6 §§ 1201(A)(1) & (2).....................................................................20

        COUNT SEVEN  FLORIDA FALSE CLAIMS ACT  FLA. STAT. ANN.
        §§ 68.082(2)(A) & (B)..............................................................................................21

        COUNT EIGHT  GEORGIA FALSE MEDICAID CLAIMS ACT  O.C.G.A.
        §§ 49-4-168.1 (A)(1) & (2)........................................................................................21



COUNT NINE  HAWAII FALSE CLAIMS ACT  HAW. REV. STAT.
§§ 661-21(A)(1) & (2) .................................................................................22

COUNT TEN  ILLINOIS FALSE CLAIMS ACT    CH. III. COMP. STAT.
740 §§ 175/3 (A)(1)(A) & (B) .......................................................................23

COUNT ELEVEN  INDIANA FALSE CLAIMS AND WHISTLEBLOWER
PROTECTION ACT  IND. CODE §§ 5-11-5.5-2(B)(1) & (2) ...........................23

COUNT TWELVE  IOWA FALSE CLAIMS ACT  IOWA CODE
§§ 685.2(1)(A) & (B) ....................................................................................24

COUNT THIRTEEN  LOUISIANA MEDICAL ASSISTANCE PROGRAMS
INTEGRITY LAW  LA REV. STAT. §§ 46:438.3 (A) & (B) ...........................25

COUNT FOURTEEN  MARYLAND FALSE HEALTH CLAIMS LAW
MD. CODE HEALTH-GEN. §§ 2-602(A)(1) & (2) .........................................25

COUNT FIFTEEN  MASSACHUSETTS FALSE CLAIMS ACT  MASS.
GEN. LAWS CH. 12 §§ 5B(1) & (2) ...............................................................26

COUNT SIXTEEN  MICHIGAN MEDICAID FALSE CLAIMS ACT
MICH. COMP. LAWS §§ 400.603 (1) ............................................................27

COUNT SEVENTEEN  MINNESOTA FALSE CLAIMS ACT  MINN.
STAT. §§ 15C.02(A)(1) & (2) ........................................................................27

COUNT EIGHTEEN  MONTANA FALSE CLAIMS ACT  MONT. CODE
§§ 17-8-403(1)(A) & (B) ...............................................................................28

COUNT NINETEEN  NEVADA FALSE CLAIMS ACT  NEV. REV. STAT.
§§ 357.040(1)(A) & (B) .................................................................................29

COUNT TWENTY  NEW JERSEY FALSE CLAIMS ACT  N.J. STAT.
§§ 2A: 32C-3(A) & (B).....................................................................................30

COUNT TWENTY-ONE  NEW MEXICO MEDICAID FALSE CLAIMS ACT
N. M. STAT. §§ 27-14-4(A) & (C) .................................................................30

COUNT TWENTY-TWO  NEW YORK FALSE CLAIMS ACT  N.Y. STATE
FIN. LAW §§ 189(1)(A) & (B) ......................................................................31

COUNT TWENTY-THREE  NORTH CAROLINA FALSE CLAIMS ACT
N.C. GEN. STAT. 52 §§ 1-607(A)(1) & (2) ..................................................32

COUNT TWENTY-FOUR  OKLAHOMA MEDICAID FALSE CLAIMS ACT
OKLA. STAT. TIT. 63 § 5053.1(B)(1) & (2) ................................................32

COUNT TWENTY-FIVE  RHODE ISLAND STATE FALSE CLAIMS ACT
R.I. GEN. LAWS §§ 9-1.1-3(A)(1) & (2) ......................................................33

COUNT TWENTY-SIX  TENNESSEE MEDICAID FALSE CLAIMS ACT
TENN. CODE §§ 4-18-103(A)(1) & (2) ..........................................................34



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

COUNT TWENTY-SEVEN  TEXAS MEDICAID FRAUD PREVENTION
ACT  TEX. HUM. RES. CODE §§ 36.002(1) & (2)..........................................................35

COUNT TWENTY-EIGHT  VIRGINIA FRAUD AGAINST TAXPAYERS
ACT  VA. CODE §§ 8.01-216.3(A)(1) & (2)..................................................................35

COUNT TWENTY-NINE  WASHINGTON MEDICAID FRAUD FALSE
CLAIMS ACT  RCW §§ 74.66.020(1)(A) & (B)..............................................................36

COUNT THIRTY  WISCONSIN FALSE CLAIMS FOR MEDICAL
ASSISTANCE ACT  WIS. STAT. ANN.  §§ 29.931(2)(A) & (B)...................................37

COUNT THIRTY-ONE  DISTRICT OF COLUMBIA FALSE CLAIMS
ACT  D.C. CODE §§ 2-381.02(A)(1) & (2)....................................................................37

PRAYER FOR RELIEF ...........................................................................................................38

DEMAND FOR JURY TRIAL ................................................................................................39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT - iii
006217-11  696405 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    This is an action brought by Plaintiff-Relator Dr. Robert Chinnapongse on behalf of the

2    United States of America and the States of California, Colorado, Connecticut, Delaware, Florida,

3    Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan,

4    Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma,

5    Rhode Island, Tennessee, Texas, Virginia, Washington, Wisconsin, and the District of Columbia

6    (collectively "the States") to recover treble damages and civil penalties under the False Claims

7    Act,[1] and the several state statutes enumerated below, against Defendant US WorldMeds, LLC,

8    for its unlawful actions in submitting and causing the submission of claims for the off-label use

9    of its injectable products and for violations of the Anti-Kickback Statute.[2]

## I.    INTRODUCTION

10

11    1.    US WorldMeds, LLC ("USWM") is a niche pharmaceutical product provider

12    created and managed by a business entrepreneur looking to acquire and develop medical

13    products with potential for significant revenue enhancement.  With an initial focus on a single

14    product, USWM acquired rights to additional products for development and marketing in August

15    2010, when it acquired the rights to Myobloc (rimabotulinumtoxinB), an injectable product

16    approved to treat cervical dystonia, a condition of abnormal contractions of the muscles of the

17    head and neck, and later, in late 2011, the rights to Apokyn Injection (apomorphine), an

18    injectable product approved to treat the "off-episodes" in advanced Parkinson's Disease.

19    2.    Plaintiff-Relator Dr. Chinnapongse retained his role as Senior Medical Director at

20    USWM following USWM's acquisition of Solstice Neurosciences, Inc., in August of 2010.  Dr.

21    Chinnapongse had previously worked at Solstice since 2006 and was the person most

22    knowledgeable about Myobloc, Solstice's sole product, so he was retained by USWM.

23    3.    Since the start of his tenure with USWM, Dr. Chinnapongse has grown

24    increasingly concerned about USWM's promotional practices and relationships with the

25    physician community.  Unfortunately, USWM's myopic focus on revenue growth and the

26    expansion of sales for these two injectable products has come at the expense of ethical and legal

27    [1] 31 U.S.C. §§ 3729-3733.

28    [2] 42 U.S.C. § 1320a-7b(g).

COMPLAINT - 1
006217-11 696405 V1

1    obligations, resulting in systematic violations of the rules against off-label promotion and the

2    providing of kickbacks to medical providers, as discussed further below.

3         4.      Though Myobloc and Apokyn are indicated for only a limited use (a single

4    indication each), both are used off-label.  With respect to Myobloc in particular, it is aggressively

5    promoted for a variety of off-label applications, with USWM and its paid physician consultants

6    endorsing the products for everything from headaches to generalized pain without sufficient

7    clinical support or any approval by the FDA for these uses.

8         5.      In 2010, Allergan pleaded guilty to criminal charges involving its unlawful, off-

9    label promotion of the competitor injectable product Botox for uses including pain and

10   headaches, paying $600 million in fines and forfeitures to the Department of Justice for its

11   improper conduct.  This precedent notwithstanding, USWM has elected to imitate rather than

12   avoid the ethical and legal transgressions of its dominant market competitor.[3]

13        6.      For several years Plaintiff-Relator Dr. Chinnapongse has objected to USWM's

14   pattern and practice of off-label promotion and the provision of kickbacks to physicians to use

15   and promote its products, off-label and otherwise.

16        7.      Despite several contrary assurances from management over the past three years,

17   Dr. Chinnapongse concludes that USWM does not wish to bring its practices into compliance,

18   despite ample opportunity to do so.  Because of the cost to government health care programs for

19   payments made on claims for unapproved, non-reimbursable uses of USWM product, and

20   improper, unlawful payments to physicians in exchange for their high-volume use and promotion

21   of Myobloc and Apokyn, Dr. Chinnapongse brings now this action under federal and state False

22   Claims Act statutes.

23        [3] It was recently reported that Allergan continues to seek expansion of Botox use, to include
     the treatment of maladies ranging from premature ejaculation to arthritic pain, from depression to
24   cerebral palsy.  *See* Joseph Walker, "*Botox Itself Aims Not to Age*," Wall Street Journal, B-1,
25   May 19, 2014.

26        Utilizing the results of valid clinical studies to support new indications in applications before
     the FDA is one mechanism for expanding the application of drug and biologic products; the
27   unlawful mechanism is to market, through kickbacks to physicians and off-label promotion, in
     support of additional uses in the complete absence of FDA approval and often in lieu of putting
28   time and resources behind substantive clinical study supporting new indications.

COMPLAINT - 2
006217-11 696405 V1

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## II.   PARTIES

8.      Plaintiff-Relator Dr. Robert Chinnapongse is the Senior Medical Director at Solstice Neurosciences, LLC, a wholly-owned subsidiary of US WorldMeds, LLC. After several years of private practice, Dr. Chinnapongse became Medical Director at Solstice in 2006, which was purchased by US WorldMeds in August of 2010. Dr. Chinnapongse is the original source of the allegations and transactions found in this Complaint and substantially all information regarding the allegations and transactions discussed here was disclosed and provided to the United States and the States prior to filing this Complaint.

9.      Defendant US WorldMeds, LLC, is a privately-held pharmaceutical company based in Louisville, Kentucky. USWM develops, licenses, and commercializes pharmaceutical products nationwide and around the world. The Company currently has three marketed products in its line-up, each of them an injectable: (a) Revonto (indicated for the treatment of malignant hyperthermia); (b) Myobloc (indicated for the treatment of cervical dystonia in adults); and (c) Apokyn (indicated for acute, intermittent treatment of hypomobility, "off" episodes associated with Parkinson's Disease).

## III.   JURISDICTION AND VENUE

10.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought under 31 U.S.C. § 3730. Plaintiff-Relator Dr. Chinnapongse establishes subject matter jurisdiction pursuant to 28 U.S.C. § 3730(b).

11.     As per 31 U.S.C. § 3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint with respect to which Plaintiff-Relator is not an "original source," and all material information relevant to the allegations made here was provided to the United States Government and the States, per State false claims act requirements, prior to filing this Complaint.

12.     The Court has personal jurisdiction over the Defendant, and venue is proper in this Court, pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

HB HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

13.     The Court also has jurisdiction over the several State false claims act causes of action (Counts III – XXXI) under 31 U.S.C. § 3732(b).

## IV.     BACKGROUND

### A.     Medicare

14.     Medicare is a federal health care program providing subsidized health insurance for the elderly and disabled.[4]  The Department of Health and Human Services administers Medicare through its sub-agency the Centers for Medicare and Medicaid Services (CMS). Much of Medicare's daily operation is handled through private insurers under contracts with the federal government, typically through CMS.

15.     Medicare now has four parts:  Part A (hospital insurance which includes hospital care and related ancillary services); Part B (which includes the cost of physician services and outpatient services); Part C (managed care plans); and Part D (prescription drugs).

16.     Medicare Part B typically covers both the physician service component and the cost of physician-administered injections of both drugs and biologics.  Part B, like Medicare generally, will only pay for these costs when medically necessary for the patient.[5]

### B.     Medicaid

17.     The Medicaid program is a joint federal-state program that provides health care benefits for certain groups, primarily the indigent and disabled.[6]  Funding for Medicaid is shared between the federal and state governments that participate in the program.  The federal government often provides 50% or more of the funding.

### C.     Other Government Health Care Programs

18.     TRICARE (formerly referred to as CHAMPUS) is a federally funded, regionally managed medical insurance program for active duty and retired members of the uniformed

---

[4] 42 U.S.C. § 1395, *et seq.*

[5] *See, e.g.*, 42 U.S.C. § 1395y(a)(1)(A) (under Medicare Part B "no payment may be made … for any expenses incurred for items or services which … are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member").

[6] 42 U.S.C. § 1396a, *et seq.*

HB HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  services, their spouses, survivors, and unmarried dependent children, operated by the United

2  States Department of Defense.

3      19.     For those military members not eligible for TRICARE, CHAMPVA

4  (administered by the United States Department of Veterans Affairs) is a health care program for

5  the families of veterans with service-connected disabilities.  CHAMPVA covers, in whole or

6  part, services provided to qualified veteran beneficiaries in emergency departments.

7      20.     The Federal Employee Health Benefit Program, administered by the United States

8  Office of Personnel Management, provides health insurance for federal employees, retirees, and

9  survivors.

10     21.     Each of the aforementioned government health care programs is funded by

11  taxpayers, places restrictions or prohibitions on payment for non-indicated uses, and prohibits

12  payment where the underlying claim is made in violation of the Anti-Kickback Statute.

13  **D.     US WorldMeds' Injectable Products Myobloc and Apokyn**

14       **1.     Myobloc**

15     22.     As noted above, Defendant USWM acquired the now wholly-owned subsidiary

16  Solstice Neurosciences, LLC (then Solstice Neurosciences, Inc.) in August of 2010.   That

17  acquisition brought with it the ownership of Myobloc (rimabotulinumtoxinB), a botulinum toxin

18  approved by the FDA for the treatment of cervical dystonia.  Myobloc is a particular form

19  (serotype) of botulinum toxin, known as type B, in contrast to the dominant competitor product

20  Botox, marketed by Allergan, which is a type A botulinum toxin (or onabotulinumtoxinA).[7]

21     23.     Cervical dystonia (also called spasmodic torticollis) is a chronic neurological

22  movement disorder characterized by involuntary neck movements and the abnormal contraction

23  of head and neck muscles causing both abnormal head positioning and pain for sufferers.

24

25

26     _____

[7] There are two other type A botulinum toxin competitors on the market in the U.S.: Dysport
27  (abobotulinumtoxinA marketed by Ipsen) and Xeomin (incobotulinumtoxinA marketed by
Merz).  Myobloc is the only type B botulinum commercially available in the world, and USWM
28  is currently the sole manufacturer.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

24.     The severity of this movement disorder is commonly tested by the Toronto Western Spasmodic Torticollis Rating Scale (TWSTRS), which seeks to capture the severity, disability, and pain level of the patient.

25.     The use of botulinum injections injected by physicians directly into the affected muscle area is generally considered to be the first-line treatment of cervical dystonia.  Among patients using such injections, botulinum toxin type A (mainly the Botox brand) is by far the most common.  Myobloc is the only type B toxin available in the United States.

26.     As stated, Myobloc is approved by the FDA only for a single indication – that is, for the treatment of adults with cervical dystonia to reduce the severity of abnormal head position and neck pain associated with cervical dystonia.  A much larger off-label population exists for unapproved uses, including cosmetic uses, each of which USWM is forbidden by federal law to promote.

**2.     Apokyn**

27.     Apokyn (apomorphine hydrochloride injection) has been approved by the FDA since 2004 for a single indication – to treat, by injection, the loss of control of body movements in people suffering from advanced Parkinson's Disease.  This ailment is often referred to as "*off-episodes*" or "hypomobility" associated with advanced Parkinson's.

28.     Injected subcutaneously, apomorphine is effective almost immediately in helping to allow sufferers to self-direct bodily movement.

29.     USWM took over the commercialization of Apokyn in the United States in December of 2011, though it remains owned by Britannia Pharmaceuticals, headquartered in the U.K.

## V.     ALLEGATIONS

30.     Defendant USWM has for several years implemented an aggressive growth strategy for its products, premised upon off-label marketing and improper relationships with physicians as a means to increase sales.

31.     USWM promotes Myobloc for use to treat generalized pain, spasticity, headaches,

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  sialorrhea (drooling) and other ailments of varying severity, as well as purely for cosmetic use.

2  This off-label promotion is accomplished, *inter alia*, through physician visits and injection

3  trainings throughout the United States, through payments to practitioners who work with the

4  USWM sales force to present off-label uses to medical audiences, and by way of corrupted

5  advisory boards created to promote USWM products off-label rather than to gather information

6  for the Company about use of its products.

7        32.    USWM pays physicians, in violation of the Anti-Kickback Statute and other laws,

8  to prescribe, purchase, and promote its products off-label, to serve on promotional advisory

9  boards designed to promote off-label, and to financially reward the users of its product through

10  consulting fees and speaker honoraria.

11  **A.    Unlawful Promotion and Kickbacks for Promotion and Use of Myobloc and Apokyn**
        **Results in the Submission of False Claims**
12

13        33.    Early in his tenure with USWM, Dr. Chinnapongse got a preview of the ethics-

14  bending habits of his new employer.  In January 2011 Dr. Chinnapongse, then the Medical

15  Director, was asked to travel to Kentucky to train Chief Operating Officer Lee Warren's dentist

16  on how to utilize Myobloc for off-label, cosmetic uses on dental patients.

17        34.    Though Dr. Chinnapongse came to learn that COO Warren had already provided

18  the dentist with free samples and encouraged off-label use of Myobloc, Dr. Chinnapongse was

19  uncomfortable with this situation and therefore required that the dentist document this incident

20  by submitting an unsolicited request for education and training as per federal regulations.

21        35.    In other similar instances, Dr. Chinnapongse would later be directed to provide

22  training in cosmetic use to Lee Warren's sister and her colleagues (OB/GYNs), and to meet with

23  a prominent plastic surgeon's staff in Kentucky to discuss data on cosmetic uses for Myobloc

24  after the staff was provided free samples of the product.

25        36.    Dr. Chinnapongse soon came to learn as well that USWM was intent on utilizing

26  its sales team to cajole doctors into participating on purported advisory board presentations to

27  highlight off-label uses of its products.  These ad boards were held dozens and dozens of times

28  each year, well past the point at which the Defendant learned scientific and practitioner

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    information about the uses of its product; the information flow was instead content from USWM

2    and its paid physician promoters to potential customers.

3         37.     In August of 2011, Henry van den Berg, USWM's Vice President of Medical

4    Affairs, emailed a private practitioner Dr. Brad Racette requesting that he participate in advisory

5    board activities for USWM to present on off-label uses of Myobloc. Dr. Racette responded, "[i]n

6    general I don't participate in advisory boards. I prefer to avoid any impression of conflict of

7    interest." Dr. Chinnapongse knows Dr. Racette to maintain high ethical standards, generally

8    refusing even to have conversations with drug reps.

9         38.     USWM VP van den Berg then wrote Dr. Chinnapongse, COO Warren, and others

10   emphasizing that despite Dr. Racette's protests, "I still would like Brad Racette's involvement in

11   some way. He is such a strong advocate for sialorrhea ..." an off-label use of Myobloc.

12        39.     Illustrating further the extent to which USWM improperly uses its so-called

13   advisory boards as promotional vehicles for the off-label use of its injectable products, the

14   USWM sales force is chiefly responsible for selecting and persuading physicians to participate.

15        40.     In February 2012, Dr. Chinnapongse was informed of an upcoming Los Angeles

16   area advisory board organized by regional account manager Peter Tsai, and including Dr.

17   Rodrigo Rodriquez (the area's "Biggest Account, Biggest Injector" of Myobloc) along with

18   several other users and non-users of Myobloc who would participate in and digest the off-label

19   promotional pitch for the product. Dr. Rodriquez continues to be one of the country's largest

20   users of Myobloc and the sales team is instructed to use him often as a paid promotional

21   consultant.

22        41.     A core message of USWM's off-label promotion of Myobloc centers on

23   encouraging and training physicians to bill for treatment of cervical dystonia without a legitimate

24   medical basis or even a good faith belief that such a diagnosis is accurate. The reason USWM

25   encourages physicians to bill for cervical dystonia is simple – it is the single condition for which

26   the product is indicated and which will reliably be paid by government payors and others.

27        42.     An email in March of 2012 from then National Sales Director Brian Bennett to

28

[HB] HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  Dr. Chinnapongse, COO Warren, and VP van den Berg, asked Dr. Chinnapongse to weigh in on

2  what was "wrong (or right)" with a new messaging strategy to encourage physicians to more

3  aggressively diagnose cervical dystonia even when the physician was reluctant.  The email

4  discussed USWM's success with encouraging and showing doctors how to more aggressively

5  diagnose cervical dystonia so that it could be billed to Medicare and other payors.

6      43.    Dr. Chinnapongse, in email response, cautioned "we should not be giving the

7  impression that we are convincing docs to diagnose or code a certain way all for the intention of

8  getting reimbursed," since, among other reasons, "a doc may take it too far … and there is the

9  risk of Medicare fraud."  Dr. Chinnapongse also noted that "some docs may be offended if a

10  sales manager were to direct them how to diagnose."

11      44.    USWM uses both visits to physicians and advisory board meetings to promote the

12  off-label utilization of Myobloc.  The advisory board meetings typically compensate physicians

13  in attendance at high-end restaurants.  For example, a May 2012 USWM advisory board meeting

14  to discuss the off-label use of Myobloc in Cleveland provided $500 to attending physicians at

15  Fleming's Prime Steakhouse.  Many more boards were set that year, in major cities such as

16  Orlando, Detroit, Houston, Phoenix, Atlanta, and Charlotte, typically at Morton's Steakhouse or

17  similar locales, under the supervision of VP Henry van den Berg and National Sales Director

18  Brian Bennett.

19      45.    In September 2012 Bennett emailed company executives and the sales force, as

20  well as Dr. Chinnapongse, applauding the effort to "redefine the degree of CD at which a

21  physician can treat" as part of USWM's efforts to convince physicians to diagnose (and bill) for

22  treatment of CD more aggressively than science would justify.  Bennett continued, "We are

23  going to review from a clinical opportunity how we switch a physicians [sic] thinking regarding

24  treating earlier, i.e., 15 degree tilt or lower.  As we have agreed, most don't treat until 23% or

25  more.  Vikki has been extremely helpful in redirection of our customers [sic] thinking."

26      46.    The "Vikki" referred to above is Dr. Vikki Alvarez, a Texas neurologist who

27  began using Apokyn at a high volume in 2012 and quickly became the top user and the premiere

28

HB  HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    beneficiary of improper payments and trips, and the single most utilized, nearly full-time

2    consultant promoter of USWM products. She also began working on advisory boards and

3    helping with direct detailing visits with the sales team on a regular basis.

4         47.    She is also now the largest prescriber of Apokyn in the nation, by a wide margin.

5    This despite the fact that prior to her paid work as a medical consultant for USWM, she rarely

6    used Apokyn at all. Other physicians have followed similar patterns in their relationships with

7    USWM, though Dr. Alvarez appears to be the most egregious.

8         48.    As Dr. Chinnapongse and his colleague Dr. Jean Hubble became increasingly

9    concerned about Dr. Alvarez's involvement with USWM, Dr. Alvarez wrote them both, in 2012,

10   to remind them of her value to the Company, "let us not neglect our valuable current customers

11   and prescribers – both Patrick and I remain one of the top prescribers of Myobloc and Apokyn."

12   "Patrick" refers to Dr. Patrick Grogan who is Dr. Alvarez's husband and (not coincidentally) the

13   largest purchaser of Myobloc through his position as an Air Force neurologist at Brooke Army

14   Medical Center.

15        49.    VP van den Berg routinely demands the frequent use of advisory boards as a

16   vehicle for off-label promotion. In an October 2012 email he wrote, "P&MR [sic] specialists are

17   key to our current Myobloc business, and up to now heavily underrepresented in our Ad boards

18   because it is more targeted to the neurologist for sialorrhea and pain." Both of those "targets"

19   are off-label, unapproved uses for Myobloc. In order to target PM&R (Physical Medical and

20   Rehabilitation) specialists, an advisory board was conducted at the AAPMR national assembly in

21   2012, with a focus on limb spasticity, a particular ailment for which there is very little Myobloc

22   data in support of its use but for which Myobloc is routinely promoted by USWM and used in

23   the field.

24        50.    The aggressive use of advisory boards continued into 2013, with events organized

25   by the sales force for January – March in Milwaukee, Austin, St. Louis, Seattle, San Diego, and

26   Miami. Dr. Chinnapongse became increasingly concerned about the constant, unlawful use of

27   these boards as promotional vehicles, and in particular the fact that the sales force was

28

COMPLAINT - 10
006217-11 696405 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    instrumental in selecting the cities and physicians for attendance and directly inviting and

2    encouraging their participation.

3    51.    In December 2012, Dr. Chinnapongse emailed sales managers and VP van den

4    Berg with his concerns: "Given that the purpose of these boards is to obtain feedback for

5    scientific development from the Advisory attendees on a regional basis, is it helpful to have one

6    again in the same city with likely the same people?"  Dr. Chinnapongse later reiterated, "I

7    thought it might be time to consider tapering these programs down, as we have been gathering

8    regional scientific feedback with these for almost 2 years now, and the programs have served

9    their purpose …."

10   52.    Todd Ruhe, Regional Sales Director, responded to Dr. Chinnapongse that the

11   Company was "going to seek out some new customers that we have in recent months got

12   interested in Myobloc."  Ruhe went on to observe that with the sales team on board, "it brings a

13   higher level of pull-thru and follow-up post the meeting(s) which benefits all."  "Pull through" is

14   a sales term referring to the ability to generate sales after the meeting – an improper vehicle for

15   promotion.

16   53.    Under proper conditions for ad boards, "new customers" would not have a role to

17   play given their relative inexperience with the product.  These physicians were invited by

18   USWM, instead, so the product could be promoted inappropriately.

19   54.    Todd Ruhe, in particular, pushed for aggressive use of these ad boards as a

20   promotional vehicle in his district.  In a teleconference following one advisory board event in

21   Los Angeles, Ruhe enthusiastically described the event (which he helped organize and attended)

22   as "phenomenal" in its generation of new product sales.  At a separate event for physicians in

23   San Diego, Ruhe orchestrated having the event at a luxury hotel where physician attendees were

24   provided free accommodations.

25   55.    Central to USWM's marketing campaign throughout 2012-2013 was the use of

26   Dr. Vikki Alvarez, the Texas physician noted above who has been paid large sums of money by

27   the Company to aggressively promote the use of its injectable products to the physician

28

COMPLAINT - 11
006217-11  696405 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   community.  Dr. Alvarez is the Defendant's highest paid consultant and, not surprisingly, its

2   largest user and purchaser of Apokyn, and a large purchaser of Myobloc as well (the product for

3   which her husband is also the single largest purchaser).

4          56.    In addition to her consultant fees and honoraria, Dr. Alvarez has been provided

5   more additional remuneration in the form of expensive dinners, frequent samples of USWM

6   product for her clinic, trips to Hawaii and elsewhere (including trips to meetings on the private

7   Company jet with her husband), and an all-expense-paid trip to the Kentucky Derby in the

8   Company box.  Given the millions of dollars in prescriptions for both Apokyn and Myobloc that

9   Dr. Alvarez and her husband provide in return, this is a small "investment" for USWM.

10         57.    By the end of 2012, Dr. Chinnapongse was hearing from several sales

11  representatives for the Company that Dr. Alvarez aggressively promoted to other physicians,

12  often improperly, that even headaches could be and should be treated and coded (for billing) as

13  cervical dystonia.

14         58.    USWM's urge to metastasize the use of its products across several patient

15  conditions at all costs has led it to disregard the wisdom, ethics, and legality of working with Dr.

16  Alvarez and others in this manner.  This occurs over the objection of Dr. Chinnapongse, several

17  sales representatives, and others who have warned the executive leadership of USWM about

18  payments to her and other improper dealings with her.

19         59.    In August of 2012, over the objection of Kristen Gullo, then USWM Senior

20  Manager of Strategic and Clinical Operations, and others including Dr. Chinnapongse, Dr.

21  Alvarez was selected (at her insistence) to participate with use of her clinic as a clinical site

22  location in an Apokyn research study, despite her lack of capacity and limited experience in a

23  clinical testing environment.

24         60.    In an email conversation on the topic, VP van den Berg assured the objectors that

25  Dr. Alvarez had sufficient clinical experience - "I have been very direct with her, that if we get in

26  trouble, we need to reconsider, and she understands.  She also has interest in the sialorrhea study

27  for Myobloc."

28

COMPLAINT - 12
006217-11  696405 V1

61.     Dr. Chinnapongse responded via email on August 31, expressing further concern to Ms. Gullo and van den Berg about the use of Dr. Alvarez.  As he explained, "While she does have knowledge of Apokyn, there are MANY more investigators and sites with more knowledge of Apokyn (she literally just started using it earlier this year), and MUCH MORE research experience.  Vikki's clinic is tiny, she is very green, she is not academic, and she has very limited research experience."

62.     Dr. Chinnapongse asked, after noting several other qualified researchers who would be happy to participate instead, "what quality puts Vikki at the top of the list?"

63.     USWM VP van den Berg answered Dr. Chinnapongse, "Vikki is the number 2 prescriber for 2012, and since she is out every week, she has a lot of potential to spread the news … I would argue more than any other."  In other words, Dr. Alvarez was out promoting USWM products "every week," was then the #2 purchaser of USWM product, and she needed to be taken care of by the Company.  Ultimately, as predicted and warned by Dr. Chinnapongse, Dr. Alvarez's involvement in the Apokyn research trial was a disaster, with several site and protocol violations found as a result of her inexperience.

64.     By the end of 2012, Dr. Alvarez was the "Top Referring Injector" for Myobloc.  Dr. Alvarez's husband, Dr. Patrick Grogan (who provided injections at Brooke Army Medical Center), drove the Medical Center into the #1 customer position for Myobloc in 2012 – purchasing almost twice the volume of Myobloc as the next largest purchaser nationally.

65.     A December 2013 YTD sales report listed Dr. Alvarez as the top Apokyn prescriber for the year, with 2,263 cartridges of Apokyn under her belt – the next closest prescriber in the nation was a distant second at 1,225 cartridges.  Those 2,263 cartridges represent over $2 million in prescriptions, much of them billed to government payors.

66.     Dr. Chinnapongse expressed concern that Dr. Alvarez was somehow purchasing this large volume of Apokyn despite working only 2-3 days in her small clinic.  This fact is perplexing given that other physicians who work 5-6 days a week in clinic do not approach her volume of purchases.

67.     USWM not only provides kickbacks of various sorts to high-utilization physicians, but sometimes even physician support staff. Dr. Eric Pappert, a neurologist and top user of USWM products in San Antonio who also is a frequent paid consultant for USWM, employs an office assistant named Tony Chambers, a person with no medical or nursing degree. Despite this, and over the strong objection of Dr. Chinnapongse, Mr. Chambers has been invited to USWM advisory boards and other Company events, paid for improperly by USWM.

68.     In January 2013, Dr. Chinnapongse wrote to COO Warren and VP van den Berg to express concern about including Chambers, an office assistant, in an upcoming advisory board. "I know you realize that the role of an Advisory Board is for purely scientific discussion to obtain valuable feedback from the attendee *advisors*. I have no idea what purpose Tony is serving by being there," wrote Dr. Chinnapongse.

69.     In response, COO Warren wrote a single sentence, "Thank you for your concern, we discussed his attendance and made a business decision. Thanks. Lee." As Dr. Chinnapongse has continued to observe, USWM has made a practice of violating the law in the name of "business decision[s]."

70.     As the person known to identify patients for Apokyn and who orders Myobloc for Dr. Pappert's practice, Chambers himself has been provided expensive meals by the USWM sales staff and been provided travel to Miami for an Apokyn speaker training and to Las Vegas for Key Opinion Leaders meetings with Parkinson specialists.

71.     As the improper kickbacks to Dr. Alvarez and others and the improper use of advisory boards for off-label promotion continued apace, Dr. Chinnapongse wrote a lengthy letter to COO Warren on May 16, 2013.

72.     In his letter, Dr. Chinnapongse elaborated on his concerns, including paid trips for Dr. Alvarez to fly to Alaska and to Hawaii (a trip that required sales staff to hastily pull together meetings to give the trip an appearance of propriety). He forcefully recommended that USWM discontinue using Dr. Alvarez as a paid consultant.

73.     It had become plain to Dr. Chinnapongse that the Company would prefer to

COMPLAINT - 14
006217-11  696405 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  outsource its off-label promotion of Myobloc and Apokyn by the use of paid physicians such as

2  Dr. Alvarez rather than utilize its own medical directors (himself and Dr. Hubble) because those

3  directors would not be willing to promote off-label use nor could they write prescriptions for or

4  purchase Company product for use.

5        74.    In quick response to Dr. Chinnapongse's letter, the Company COO summoned

6  him down to headquarters in Kentucky.  Dr. Chinnapongse was told that he had two choices: (a)

7  he could accept a generous severance offer and leave USWM, with the suggestion that he was

8  "not happy," or (b) he could move full-time into clinical development and away from medical

9  affairs.  Dr. Chinnapongse elected to move into clinical development and has maintained his

10  position in that department since the summer of 2013.

11        75.    In September of 2013, USWM conducted another Apokyn Experts meeting at a

12  resort in Scottsdale, Arizona.  Parkinson's Disease specialists were flown in from around the

13  country and paid an honorarium to receive education on PD and the use of Apokyn to treat it.  In

14  addition to the on-label instruction for Apokyn, USWM also presented an "advisory board" on

15  the use of Myobloc to treat sialorrhea (or drooling).  This is an off-label use and Myobloc is not

16  approved for any treatment of symptoms associated with PD.  USWM rented ultrasound

17  machines and had a live-model workshop showing physicians how to properly inject (off-label)

18  into the salivary glands for treatment of this condition.

19        76.    Dr. Chinnapongse was asked by USWM to moderate this exercise, given his

20  singular expertise regarding Myobloc.  Dr. Chinnapongse refused to do so.  This time, Dr.

21  Chinnapongse did not receive pushback from USWM for his refusal – aware as it was that this

22  event was particularly unlawful.

23        77.    USWM has not changed its off-label promotional and kickback practices in 2014.

24  This February, Dr. Chinnapongse, still the leading expert on Myobloc in the country, was asked

25  by VP van den Berg to run an advisory board with a Dr. Hogan in Portland, Oregon, then set for

26  April, 2014.

27        78.    This advisory board presentation was to include several slides of information to

28

COMPLAINT - 15
006217-11 696405 V1

present on off-label uses of Myobloc, including for the treatment of pain.  This content was not written by the paid physician presenters on the advisory board – it was written by USWM with the inclusion of several pages of off-label promotional materials, promoting "Myobloc in Pain," including treatment of "Chronic Migraine" conditions.

79.     Dr. Chinnapongse presumed that the advisory boards had ceased the prior year, given their frequency.  He expressed his unease about participating in the April promotional event, having already expressed his objection to the continued use of advisory boards for promotional purposes.

80.     Though the Company put his name on the USWM-authored slide deck for the April advisory board meeting, Dr. Chinnapongse was not involved in its production and managed to beg his way out of participation in the event.

81.     Instead of investing time and resources into approved clinical research studies that might lead to additional indications for use of its products, USWM has chosen instead to unrelentingly push these varied off-label uses to grow its market share into areas not approved by the FDA and to foster improper kickback relationships with practitioners to increase product use.  Ironically, the one message of "advice" routinely provided back to the Company from physicians has been that it should invest in more research.

82.     USWM continues to reward and utilize high-volume purchasers of its products, to move grant funding toward high-volume purchasers, and to promote its product Myobloc for off-label, non-reimbursable uses.  Dr. Alvarez, at the time of USWM's March and April 2014 Sales Reports, remains the "Top Prescriber."

## VI.     CONCLUSION

83.     USWM, for the past several years, has presented for payment, or caused the presentment for payment, of false claims to government payors for the costs of Myobloc and Apokyn in circumstances where those claims are the product of off-label promotion for treatment of conditions not subject to reimbursement by such government health plans or where such claims are impaired by precedent violations of the Anti-Kickback Statute.

HB  HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

84.     Instead of taking care to properly engage the medical market for its injectable products, USWM has developed unlawful relationships with physicians, systematically abused the advisory board process, corrupted the grant-award process for clinical development, and relentlessly pushed the off-label use of its injectable products for uses explicitly not approved by the FDA.

85.     USWM has done this over the strenuous and repeat objection of Dr. Chinnapongse.  After failing to alter the Company's improper direction during several years of warning and advice, Dr. Chinnapongse brings now this action under the False Claims Act in hopes of returning to federal and state governments the monies paid out on improper and false claims.

## VII.    COUNTS

### COUNT ONE

### FALSE CLAIMS ACT

### 31 U.S.C. § 3729 (a)(1)(A)

86.     Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     Defendant knowingly presented and caused to be presented to the United States false or fraudulent claims for payment on claims for Apokyn and Myobloc, in violation of 31 U.S.C. § 3729(a)(1)(A).

88.     Each false claim submitted or caused to be submitted by the Defendant is subject to a penalty of between $5,500 and $11,000 for each such false claim.

### COUNT TWO

### FALSE CLAIMS ACT

### 31 U.S.C. § 3729 (a)(1)(B)

89.     Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

90.     Defendant knowingly made, used, and caused to be made or used, false or

COMPLAINT - 17
006217-11  696405 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    fraudulent records or statements material to the payment of false or fraudulent claims, thereby

2    causing false or fraudulent claims for payment on Apokyn and Myobloc to actually be paid or

3    approved, in violation of 31 U.S.C. § 3729(a)(1)(B).

4        91.    Each false claim submitted or caused to be submitted by the Defendant is subject

5    to a penalty of between $5,500 and $11,000 for each such false claim.

6                          **COUNT THREE**

7                   **CALIFORNIA FALSE CLAIMS ACT**

8                 **Cal. Gov't Code §§ 12651(a)(1) & (2)**

9        92.    Relator re-alleges and incorporates by reference the allegations contained in the

10   preceding paragraphs of this Complaint.

11       93.    By virtue of the acts described above, the Defendant knowingly presented or

12   caused to be presented, false or fraudulent claims to the State of California for payment or

13   approval.

14       94.    By virtue of the acts described above, Defendant knowingly made, used, or

15   caused to be made or used false records and statements, and omitted material facts, to induce the

16   State of California to approve and pay such false and fraudulent claims.

17       95.    The State of California, unaware of the falsity of the records, statements and

18   claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

19   that would not have been paid but for Defendant's fraudulent practices.

20       96.    By reason of Defendant's acts, the State of California has been damaged in

21   substantial amounts to be determined at trial.

22       97.    The State of California is entitled to the maximum penalty for each and every

23   false or fraudulent claim, record or statement made, used, presented or caused to be made, used

24   or presented by Defendant.

25                          **COUNT FOUR**

26          **COLORADO MEDICAID FALSE CLAIMS ACT**

27               **Colo. Rev. Stat. §§ 25.5-4-305(1)(a) & (b)**

28

COMPLAINT - 18
006217-11 696405 V1



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

98.     Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Colorado for payment or approval.

100.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Colorado to approve and pay such false and fraudulent claims.

101.    The State of Colorado, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

102.    By reason of Defendant's acts, the State of Colorado has been damaged in substantial amounts to be determined at trial.

103.    The State of Colorado is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT FIVE

### CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL ASSISTANCE PROGRAMS

### Conn. Gen. Stat. §§ 17b-301b(a)(1) & (2)

104.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

105.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Connecticut for payment or approval.

106.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Connecticut to approve and pay such false and fraudulent claims.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  107. The State of Connecticut, unaware of the falsity of the records, statements and

2 claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

3 that would not have been paid but for Defendant's fraudulent practices.

4  108. By reason of Defendant's acts, the State of Connecticut has been damaged in

5 substantial amounts to be determined at trial.

6  109. The State of Connecticut is entitled to the maximum penalty for each and every

7 false or fraudulent claim, record or statement made, used, presented or caused to be made, used

8 or presented by Defendant.

9          **COUNT SIX**

10     **DELAWARE FALSE CLAIMS AND REPORTING ACT**

11       **Del. Code Tit. 6 §§ 1201(a)(1) & (2)**

12  110. Relator re-alleges and incorporates by reference the allegations contained in the

13 preceding paragraphs of this Complaint.

14  111. By virtue of the acts described above, the Defendant knowingly presented or

15 caused to be presented, false or fraudulent claims to the State of Delaware for payment or

16 approval.

17  112. By virtue of the acts described above, Defendant knowingly made, used, or

18 caused to be made or used false records and statements, and omitted material facts, to induce the

19 State of Delaware to approve and pay such false and fraudulent claims.

20  113. The State of Delaware, unaware of the falsity of the records, statements and

21 claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

22 that would not have been paid but for Defendant's fraudulent practices.

23  114. By reason of Defendant's acts, the State of Delaware has been damaged in

24 substantial amounts to be determined at trial.

25  115. The State of Delaware is entitled to the maximum penalty for each and every false

26 or fraudulent claim, record or statement made, used, presented or caused to be made, used or

27 presented by Defendant.

28

COMPLAINT - 20
006217-11 696405 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## COUNT SEVEN

## FLORIDA FALSE CLAIMS ACT

### Fla. Stat. Ann. §§ 68.082(2)(a) & (b)

116.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

117.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Florida for payment or approval.

118.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Florida to approve and pay such false and fraudulent claims.

119.    The State of Florida, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

120.    By reason of Defendant's acts, the State of Florida has been damaged in substantial amounts to be determined at trial.

121.    The State of Florida is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT EIGHT

## GEORGIA FALSE MEDICAID CLAIMS ACT

### O.C.G.A. §§ 49-4-168.1 (a)(1) & (2)

122.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

123.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Georgia for payment or approval.

124.    By virtue of the acts described above, Defendant knowingly made, used, or

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    caused to be made or used false records and statements, and omitted material facts, to induce the

2    State of Georgia to approve and pay such false and fraudulent claims.

3          125.    The State of Georgia, unaware of the falsity of the records, statements and claims

4    made, used, presented or caused to be made, used or presented by Defendant, paid claims that

5    would not have been paid but for Defendant's fraudulent practices.

6          126.    By reason of Defendant's acts, the State of Georgia has been damaged in

7    substantial amounts to be determined at trial.

8          127.    The State of Georgia is entitled to the maximum penalty for each and every false

9    or fraudulent claim, record or statement made, used, presented or caused to be made, used or

10    presented by Defendant.

11                         **COUNT NINE**

12                **HAWAII FALSE CLAIMS ACT**

13            **Haw. Rev. Stat. §§ 661-21(a)(1) & (2)**

14          128.    Relator re-alleges and incorporates by reference the allegations contained in the

15    preceding paragraphs of this Complaint.

16          129.    By virtue of the acts described above, the Defendant knowingly presented or

17    caused to be presented, false or fraudulent claims to the State of Hawaii for payment or approval.

18          130.    By virtue of the acts described above, Defendant knowingly made, used, or

19    caused to be made or used false records and statements, and omitted material facts, to induce the

20    State of Hawaii to approve and pay such false and fraudulent claims.

21          131.    The State of Hawaii, unaware of the falsity of the records, statements and claims

22    made, used, presented or caused to be made, used or presented by Defendant, paid claims that

23    would not have been paid but for Defendant's fraudulent practices.

24          132.    By reason of Defendant's acts, the State of Hawaii has been damaged in

25    substantial amounts to be determined at trial.

26          133.    The State of Hawaii is entitled to the maximum penalty for each and every false

27    or fraudulent claim, record or statement made, used, presented or caused to be made, used or

28

HB  HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  presented by Defendant.

2  ## COUNT TEN

3  ## ILLINOIS FALSE CLAIMS ACT

4  ### Ch. III. Comp. Stat. 740 §§ 175/3 (a)(1)(A) & (B)

5  134.    Relator re-alleges and incorporates by reference the allegations contained in the

6  preceding paragraphs of this Complaint.

7  135.    By virtue of the acts described above, the Defendant knowingly presented or

8  caused to be presented, false or fraudulent claims to the State of Illinois for payment or approval.

9  136.    By virtue of the acts described above, Defendant knowingly made, used, or

10  caused to be made or used false records and statements, and omitted material facts, to induce the

11  State of Illinois to approve and pay such false and fraudulent claims.

12  137.    The State of Illinois, unaware of the falsity of the records, statements and claims

13  made, used, presented or caused to be made, used or presented by Defendant, paid claims that

14  would not have been paid but for Defendant's fraudulent practices.

15  138.    By reason of Defendant's acts, the State of Illinois has been damaged in

16  substantial amounts to be determined at trial.

17  139.    The State of Illinois is entitled to the maximum penalty for each and every false

18  or fraudulent claim, record or statement made, used, presented or caused to be made, used or

19  presented by Defendant.

20  ## COUNT ELEVEN

21  ## INDIANA FALSE CLAIMS AND WHISTLEBLOWER
   ## PROTECTION ACT

22
23  ### Ind. Code §§ 5-11-5.5-2(b)(1) & (2)

24  140.    Relator re-alleges and incorporates by reference the allegations contained in the

   preceding paragraphs of this Complaint.
25
26  141.    By virtue of the acts described above, the Defendant knowingly presented or

   caused to be presented, false or fraudulent claims to the State of Indiana for payment or approval.
27
28  142.    By virtue of the acts described above, Defendant knowingly made, used, or

COMPLAINT - 23
006217-11  696405 V1



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    caused to be made or used false records and statements, and omitted material facts, to induce the

2    State of Indiana to approve and pay such false and fraudulent claims.

3         143.    The State of Indiana, unaware of the falsity of the records, statements and claims

4    made, used, presented or caused to be made, used or presented by Defendant, paid claims that

5    would not have been paid but for Defendant's fraudulent practices.

6         144.    By reason of Defendant's acts, the State of Indiana has been damaged in

7    substantial amounts to be determined at trial.

8         145.    The State of Indiana is entitled to the maximum penalty for each and every false

9    or fraudulent claim, record or statement made, used, presented or caused to be made, used or

10   presented by Defendant.

**COUNT TWELVE**

**IOWA FALSE CLAIMS ACT**

**Iowa Code §§ 685.2(1)(a) & (b)**

14        146.    Relator re-alleges and incorporates by reference the allegations contained in the

15   preceding paragraphs of this Complaint.

16        147.    By virtue of the acts described above, the Defendant knowingly presented or

17   caused to be presented, false or fraudulent claims to the State of Iowa for payment or approval.

18        148.    By virtue of the acts described above, Defendant knowingly made, used, or

19   caused to be made or used false records and statements, and omitted material facts, to induce the

20   State of Iowa to approve and pay such false and fraudulent claims.

21        149.    The State of Iowa, unaware of the falsity of the records, statements and claims

22   made, used, presented or caused to be made, used or presented by Defendant, paid claims that

23   would not have been paid but for Defendant's fraudulent practices.

24        150.    By reason of Defendant's acts, the State of Iowa has been damaged in substantial

25   amounts to be determined at trial.

26        151.    The State of Iowa is entitled to the maximum penalty for each and every false or

27   fraudulent claim, record or statement made, used, presented or caused to be made, used or

28

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1     presented by Defendant.

2                          **COUNT THIRTEEN**

3       **LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW**

4                **La Rev. Stat. §§ 46:438.3 (A) & (B)**

5         152.    Relator re-alleges and incorporates by reference the allegations contained in the

6     preceding paragraphs of this Complaint.

7         153.    By virtue of the acts described above, the Defendant knowingly presented or

8     caused to be presented, false or fraudulent claims to the State of Louisiana for payment or

9     approval.

10        154.    By virtue of the acts described above, Defendant knowingly made, used, or

11    caused to be made or used false records and statements, and omitted material facts, to induce the

12    State of Louisiana to approve and pay such false and fraudulent claims.

13        155.    The State of Louisiana, unaware of the falsity of the records, statements and

14    claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

15    that would not have been paid but for Defendant's fraudulent practices.

16        156.    By reason of Defendant's acts, the State of Louisiana has been damaged in

17    substantial amounts to be determined at trial.

18        157.    The State of Louisiana is entitled to the maximum penalty for each and every

19    false or fraudulent claim, record or statement made, used, presented or caused to be made, used

20    or presented by Defendant.

21                         **COUNT FOURTEEN**

22          **MARYLAND FALSE HEALTH CLAIMS LAW**

23         **Md. Code Health-Gen. §§ 2-602(a)(1) & (2)**

24        158.    Relator re-alleges and incorporates by reference the allegations contained in the

25    preceding paragraphs of this Complaint.

26        159.    By virtue of the acts described above, the Defendant knowingly presented or

27    caused to be presented, false or fraudulent claims to the State of Maryland for payment or

28

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    approval.

2        160.    By virtue of the acts described above, Defendant knowingly made, used, or

3    caused to be made or used false records and statements, and omitted material facts, to induce the

4    State of Maryland to approve and pay such false and fraudulent claims.

5        161.    The State of Maryland, unaware of the falsity of the records, statements and

6    claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

7    that would not have been paid but for Defendant's fraudulent practices.

8        162.    By reason of Defendant's acts, the State of Maryland has been damaged in

9    substantial amounts to be determined at trial.

10       163.    The State of Maryland is entitled to the maximum penalty for each and every false

11    or fraudulent claim, record or statement made, used, presented or caused to be made, used or

12    presented by Defendant.

13                       **COUNT FIFTEEN**

14            **MASSACHUSETTS FALSE CLAIMS ACT**

15             **Mass. Gen. Laws Ch. 12 §§ 5B(1) & (2)**

16       164.    Relator re-alleges and incorporates by reference the allegations contained in the

17    preceding paragraphs of this Complaint.

18       165.    By virtue of the acts described above, the Defendant knowingly presented or

19    caused to be presented, false or fraudulent claims to the Commonwealth of Massachusetts for

20    payment or approval.

21       166.    By virtue of the acts described above, Defendant knowingly made, used, or

22    caused to be made or used false records and statements, and omitted material facts, to induce the

23    Commonwealth of Massachusetts to approve and pay such false and fraudulent claims.

24       167.    The Commonwealth of Massachusetts, unaware of the falsity of the records,

25    statements and claims made, used, presented or caused to be made, used or presented by

26    Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

27       168.    By reason of Defendant's acts, the Commonwealth of Massachusetts has been

28

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    damaged in substantial amounts to be determined at trial.

2           169.    The Commonwealth of Massachusetts is entitled to the maximum penalty for each

3    and every false or fraudulent claim, record or statement made, used, presented or caused to be

4    made, used or presented by Defendant.

5                                    **COUNT SIXTEEN**

6                         **MICHIGAN MEDICAID FALSE CLAIMS ACT**

7                             **Mich. Comp. Laws §§ 400.603 (1)**

8           170.    Relator re-alleges and incorporates by reference the allegations contained in the

9    preceding paragraphs of this Complaint.

10          171.    By virtue of the acts described above, the Defendant knowingly made or caused to

11   be made false statements or representations of material facts in applications for Medicaid

12   benefits.

13          172.    By virtue of the acts described above, Defendant knowingly made, used, or

14   caused to be made or used false records and statements, and omitted material facts, to induce the

15   State of Michigan to approve and pay such false and fraudulent claims.

16          173.    The State of Michigan, unaware of the falsity of the records, statements and

17   claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

18   that would not have been paid but for Defendant's fraudulent practices.

19          174.    By reason of Defendant's acts, the State of Michigan has been damaged in

20   substantial amounts to be determined at trial.

21          175.    The State of Michigan is entitled to the maximum penalty for each and every false

22   or fraudulent claim, record or statement made, used, presented or caused to be made, used or

23   presented by Defendant.

24                                   **COUNT SEVENTEEN**

25                            **MINNESOTA FALSE CLAIMS ACT**

26                            **Minn. Stat. §§ 15C.02(a)(1) & (2)**

27          176.    Relator re-alleges and incorporates by reference the allegations contained in the

28

COMPLAINT - 27
006217-11 696405 V1

1  preceding paragraphs of this Complaint.

2      177.    By virtue of the acts described above, the Defendant knowingly presented or

3  caused to be presented, false or fraudulent claims to the State of Minnesota for payment or

4  approval.

5      178.    By virtue of the acts described above, Defendant knowingly made, used, or

6  caused to be made or used false records and statements, and omitted material facts, to induce the

7  State of Minnesota to approve and pay such false and fraudulent claims.

8      179.    The State of Minnesota, unaware of the falsity of the records, statements and

9  claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

10  that would not have been paid but for Defendant's fraudulent practices.

11      180.    By reason of Defendant's acts, the State of Minnesota has been damaged in

12  substantial amounts to be determined at trial.

13      181.    The State of Minnesota is entitled to the maximum penalty for each and every

14  false or fraudulent claim, record or statement made, used, presented or caused to be made, used

15  or presented by Defendant.

16                          **COUNT EIGHTEEN**

17                    **MONTANA FALSE CLAIMS ACT**

18                  **Mont. Code §§ 17-8-403(1)(a) & (b)**

19      182.    Relator re-alleges and incorporates by reference the allegations contained in the

20  preceding paragraphs of this Complaint.

21      183.    By virtue of the acts described above, the Defendant knowingly presented or

22  caused to be presented, false or fraudulent claims to the State of Montana for payment or

23  approval.

24      184.    By virtue of the acts described above, Defendant knowingly made, used, or

25  caused to be made or used false records and statements, and omitted material facts, to induce the

26  State of Montana to approve and pay such false and fraudulent claims.

27      185.    The State of Montana, unaware of the falsity of the records, statements and claims

28

COMPLAINT - 28
006217-11  696405 V1

1   made, used, presented or caused to be made, used or presented by Defendant, paid claims that

2   would not have been paid but for Defendant's fraudulent practices.

3        186.   By reason of Defendant's acts, the State of Montana has been damaged in

4   substantial amounts to be determined at trial.

5        187.   The State of Montana is entitled to the maximum penalty for each and every false

6   or fraudulent claim, record or statement made, used, presented or caused to be made, used or

7   presented by Defendant.

8   **COUNT NINETEEN**

9   **NEVADA FALSE CLAIMS ACT**

10  **Nev. Rev. Stat. §§ 357.040(1)(a) & (b)**

11       188.   Relator re-alleges and incorporates by reference the allegations contained in the

12  preceding paragraphs of this Complaint.

13       189.   By virtue of the acts described above, the Defendant knowingly presented or

14  caused to be presented, false or fraudulent claims to the State of Nevada for payment or

15  approval.

16       190.   By virtue of the acts described above, Defendant knowingly made, used, or

17  caused to be made or used false records and statements, and omitted material facts, to induce the

18  State of Nevada to approve and pay such false and fraudulent claims.

19       191.   The State of Nevada, unaware of the falsity of the records, statements and claims

20  made, used, presented or caused to be made, used or presented by Defendant, paid claims that

21  would not have been paid but for Defendant's fraudulent practices.

22       192.   By reason of Defendant's acts, the State of Nevada has been damaged in

23  substantial amounts to be determined at trial.

24       193.   The State of Nevada is entitled to the maximum penalty for each and every false

25  or fraudulent claim, record or statement made, used, presented or caused to be made, used or

26  presented by Defendant.

27

28



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

**COUNT TWENTY**

**NEW JERSEY FALSE CLAIMS ACT**

**N.J. Stat. §§ 2A: 32C-3(a) & (b)**

194.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

195.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of New Jersey for payment or approval.

196.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of New Jersey to approve and pay such false and fraudulent claims.

197.    The State of New Jersey, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

198.    By reason of Defendant's acts, the State of New Jersey has been damaged in substantial amounts to be determined at trial.

199.    The State of New Jersey is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**COUNT TWENTY-ONE**

**NEW MEXICO MEDICAID FALSE CLAIMS ACT**

**N. M. Stat. §§ 27-14-4(A) & (C)**

200.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

201.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of New Mexico for payment or approval.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    202.    By virtue of the acts described above, Defendant knowingly made, used, or

2  caused to be made or used false records and statements, and omitted material facts, to induce the

3  State of New Mexico to approve and pay such false and fraudulent claims.

4    203.    The State of New Mexico, unaware of the falsity of the records, statements and

5  claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

6  that would not have been paid but for Defendant's fraudulent practices.

7    204.    By reason of Defendant's acts, the State of New Mexico has been damaged in

8  substantial amounts to be determined at trial.

9    205.    The State of New Mexico is entitled to the maximum penalty for each and every

10  false or fraudulent claim, record or statement made, used, presented or caused to be made, used

11  or presented by Defendant.

**COUNT TWENTY-TWO**

**NEW YORK FALSE CLAIMS ACT**

**N.Y. State Fin. Law §§ 189(1)(a) & (b)**

206.    Relator re-alleges and incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

207.    By virtue of the acts described above, the Defendant knowingly presented or

caused to be presented, false or fraudulent claims to the State of New York for payment or

approval.

208.    By virtue of the acts described above, Defendant knowingly made, used, or

caused to be made or used false records and statements, and omitted material facts, to induce the

State of New York to approve and pay such false and fraudulent claims.

209.    The State of New York, unaware of the falsity of the records, statements and

claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

that would not have been paid but for Defendant's fraudulent practices.

210.    By reason of Defendant's acts, the State of New York has been damaged in

substantial amounts to be determined at trial.

COMPLAINT - 31
006217-11 696405 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

211.    The State of New York is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**COUNT TWENTY-THREE**

**NORTH CAROLINA FALSE CLAIMS ACT**

**N.C. Gen. Stat. 52 §§ 1-607(a)(1) & (2)**

212.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

213.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of North Carolina for payment or approval.

214.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of North Carolina to approve and pay such false and fraudulent claims.

215.    The State of North Carolina, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

216.    By reason of Defendant's acts, the State of North Carolina has been damaged in substantial amounts to be determined at trial.

217.    The State of North Carolina is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**COUNT TWENTY-FOUR**

**OKLAHOMA MEDICAID FALSE CLAIMS ACT**

**Okla. Stat. Tit. 63 § 5053.1(B)(1) & (2)**

218.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

219.   By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Oklahoma for payment or approval.

220.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Oklahoma to approve and pay such false and fraudulent claims.

221.   The State of Oklahoma, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

222.   By reason of Defendant's acts, the State of Oklahoma has been damaged in substantial amounts to be determined at trial.

223.   The State of Oklahoma is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### COUNT TWENTY-FIVE

### RHODE ISLAND STATE FALSE CLAIMS ACT

### R.I. Gen. Laws §§ 9-1.1-3(a)(1) & (2)

224.   Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

225.   By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Rhode Island for payment or approval.

226.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Rhode Island to approve and pay such false and fraudulent claims.

227.   The State of Rhode Island, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

HB   HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   that would not have been paid but for Defendant's fraudulent practices.

2       228.    By reason of Defendant's acts, the State of Rhode Island has been damaged in

3   substantial amounts to be determined at trial.

4       229.    The State of Rhode Island is entitled to the maximum penalty for each and every

5   false or fraudulent claim, record or statement made, used, presented or caused to be made, used

6   or presented by Defendant.

7   **COUNT TWENTY-SIX**

8   **TENNESSEE MEDICAID FALSE CLAIMS ACT**

9   **Tenn. Code §§ 4-18-103(a)(1) & (2)**

10       230.    Relator re-alleges and incorporates by reference the allegations contained in the

11   preceding paragraphs of this Complaint.

12       231.    By virtue of the acts described above, the Defendant knowingly presented or

13   caused to be presented, false or fraudulent claims to the State of Tennessee for payment or

14   approval.

15       232.    By virtue of the acts described above, Defendant knowingly made, used, or

16   caused to be made or used false records and statements, and omitted material facts, to induce the

17   State of Tennessee to approve and pay such false and fraudulent claims.

18       233.    The State of Tennessee, unaware of the falsity of the records, statements and

19   claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

20   that would not have been paid but for Defendant's fraudulent practices.

21       234.    By reason of Defendant's acts, the State of Tennessee has been damaged in

22   substantial amounts to be determined at trial.

23       235.    The State of Tennessee is entitled to the maximum penalty for each and every

24   false or fraudulent claim, record or statement made, used, presented or caused to be made, used

25   or presented by Defendant.

26

27

28



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## COUNT TWENTY-SEVEN

### TEXAS MEDICAID FRAUD PREVENTION ACT

#### Tex. Hum. Res. Code §§ 36.002(1) & (2)

236.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

237.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Texas for payment or approval.

238.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Texas to approve and pay such false and fraudulent claims.

239.    The State of Texas, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

240.    By reason of Defendant's acts, the State of Texas has been damaged in substantial amounts to be determined at trial.

241.    The State of Texas is entitled to the maximum penalty of for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT TWENTY-EIGHT

### VIRGINIA FRAUD AGAINST TAXPAYERS ACT

#### Va. Code §§ 8.01-216.3(a)(1) & (2)

242.    Relator re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

243.    By virtue of the acts described above, the Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Commonwealth of Virginia for payment or approval.

244.    By virtue of the acts described above, Defendant knowingly made, used, or

COMPLAINT - 35
006217-11 696405 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    caused to be made or used false records and statements, and omitted material facts, to induce the

2    Commonwealth of Virginia to approve and pay such false and fraudulent claims.

3        245.     The Commonwealth of Virginia, unaware of the falsity of the records, statements

4    and claims made, used, presented or caused to be made, used or presented by Defendant, paid

5    claims that would not have been paid but for Defendant's fraudulent practices.

6        246.     By reason of Defendant's acts, the Commonwealth of Virginia has been damaged

7    in substantial amounts to be determined at trial.

8        247.     The Commonwealth of Virginia is entitled to the maximum penalty for each and

9    every false or fraudulent claim, record or statement made, used, presented or caused to be made,

10    used or presented by Defendant.

**COUNT TWENTY-NINE**

**WASHINGTON MEDICAID FRAUD FALSE CLAIMS ACT**

**RCW §§ 74.66.020(1)(a) & (b)**

14        248.     Relator re-alleges and incorporates by reference the allegations contained in the

15    preceding paragraphs of this Complaint.

16        249.     By virtue of the acts described above, the Defendant knowingly presented or

17    caused to be presented, false or fraudulent claims to the State of Washington for payment or

18    approval.

19        250.     By virtue of the acts described above, Defendant knowingly made, used, or

20    caused to be made or used false records and statements, and omitted material facts, to induce the

21    State of Washington to approve and pay such false and fraudulent claims.

22        251.     The State of Washington, unaware of the falsity of the records, statements and

23    claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

24    that would not have been paid but for Defendant's fraudulent practices.

25        252.     By reason of Defendant's acts, the State of Washington has been damaged in

26    substantial amounts to be determined at trial.

27        253.     The State of Washington is entitled to the maximum penalty for each and every



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  false or fraudulent claim, record or statement made, used, presented or caused to be made, used

2  or presented by Defendant.

3  **COUNT THIRTY**

4  **WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT**

5  **Wis. Stat. Ann. §§ 29.931(2)(a) & (b)**

6  254.    Relator re-alleges and incorporates by reference the allegations contained in the

7  preceding paragraphs of this Complaint.

8  255.    By virtue of the acts described above, the Defendant knowingly presented or

9  caused to be presented, false or fraudulent claims to the State of Wisconsin for payment or

10  approval.

11  256.    By virtue of the acts described above, Defendant knowingly made, used, or

12  caused to be made or used false records and statements, and omitted material facts, to induce the

13  State of Wisconsin to approve and pay such false and fraudulent claims.

14  257.    The State of Wisconsin, unaware of the falsity of the records, statements and

15  claims made, used, presented or caused to be made, used or presented by Defendant, paid claims

16  that would not have been paid but for Defendant's fraudulent practices.

17  258.    By reason of Defendant's acts, the State of Wisconsin has been damaged in

18  substantial amounts to be determined at trial.

19  259.    The State of Wisconsin is entitled to the maximum penalty for each and every

20  false or fraudulent claim, record or statement made, used, presented or caused to be made, used

21  or presented by Defendant.

22  **COUNT THIRTY-ONE**

23  **DISTRICT OF COLUMBIA FALSE CLAIMS ACT**

24  **D.C. Code §§ 2-381.02(a)(1) & (2)**

25  260.    Relator re-alleges and incorporates by reference the allegations contained in the

26  preceding paragraphs of this Complaint.

27  261.    By virtue of the acts described above, the Defendant knowingly presented or

28

COMPLAINT - 37
006217-11 696405 V1



caused to be presented, false or fraudulent claims to the District of Columbia for payment or approval.

262.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia to approve and pay such false and fraudulent claims.

263.    The District of Columbia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid claims that would not have been paid but for Defendant's fraudulent practices.

264.    By reason of Defendant's acts, the District of Columbia has been damaged in substantial amounts to be determined at trial.

265.    The District of Columbia is entitled to the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiff-Relator Dr. Chinnapongse, on behalf of the United States, respectfully requests that the Court enter an award of judgment against the Defendant as follows:

A.    An Order requiring Defendant to cease its violations of the False Claims Act, 31 U.S.C. § 3729, and the several State false claims act statutes;

B.    An Order entering judgment against the Defendant in an amount equal to three times the amount of damages the United States and the States have sustained as a result of its actions, plus a civil penalty against the Defendant at the maximum amount for each violation of the False Claims Act and the State false claims acts;

C.    An Order awarding to Relator Dr. Chinnapongse the maximum amount allowed as a "Relator's Share" pursuant to the False Claims Act, 31 U.S.C. § 3730(d), and similar



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    provisions of the several State false claims act statutes;

2         D.    An Order awarding to Relator Dr. Chinnapongse from the Defendant all

3    reasonable expenses that were necessarily incurred, plus reasonable attorneys' fees and costs,

4    under the False Claims Act, 31 U.S.C. § 3730(d), and similar provisions of the several State false

5    claims act statutes; and

6

7         E.    An Order awarding to the United States, the States, and Relator Dr. Chinnapongse

8    all such other relief as the Court may deem just and proper.

9                          **DEMAND FOR JURY TRIAL**

10        Relator hereby demands trial by jury as to all issues.

11

12   DATED this 16th day of June, 2014.

13                                   Respectfully submitted,

14                                   HAGENS BERMAN SOBOL SHAPIRO LLP

15

16                                   By: /s/Steve W. Berman
                                     By: /s/Shayne C. Stevenson
17                                        Steve W. Berman WSBA #12536
                                          Shayne C. Stevenson WSBA #30843
18                                   1918 Eighth Avenue, Suite 3300
19                                   Seattle, WA 98101
                                     Tel:  (206) 268-9300
20                                   Fax: (206) 623-0594
                                     Email:   steve@hbsslaw.com
21                                            shaynes@hbsslaw.com

22                                   *Attorneys for Plaintiff-Relator Dr. Chinnapongse*

23

24

25

26

27

28

HB HAGENS BERMAN